1  E. MARTIN ESTRADA
   United States Attorney
2  SCOTT M. GARRINGER
   Assistant United States Attorney
3  Chief, Criminal Division
   GREGORY BERNSTEIN (Cal. Bar No. 299204)
4  Assistant United States Attorney
   Major Frauds Section
5  HEATHER C. GORMAN (Cal. Bar. No. 258920)
   Assistant United States Attorney
6  Environmental and Community Safety Crimes Section
        1100 United States Courthouse
7       312 North Spring Street
        Los Angeles, California
8       Telephone: 213-894-3183
        Email:    Gregory.Bernstein@usdoj.gov
9
   Attorneys for Plaintiff
10 UNITED STATES OF AMERICA

11              UNITED STATES DISTRICT COURT

12          FOR THE CENTRAL DISTRICT OF CALIFORNIA

13 UNITED STATES OF AMERICA,          No. CR  2:22-cr-00588-DSF

14          Plaintiff,                PLEA AGREEMENT FOR DEFENDANT
                                      KAMBIZ YOUABIAN
15          v.

16 KAMBIZ YOUABIAN,

17          Defendant.

18

19      1.   This constitutes the plea agreement between Kambiz

20 Youabian ("defendant") and the United States Attorney's Office for

21 the Central District of California (the "USAO") in the above-

22 captioned case. This agreement is limited to the USAO and cannot

23 bind any other federal, state, local, or foreign prosecuting,

24 enforcement, administrative, or regulatory authorities.

25              DEFENDANT'S OBLIGATIONS

26      2.   Defendant agrees to:

27           a.   Give up the right to indictment by a grand jury and,

28 at the earliest opportunity requested by the USAO and provided by

                          1

FILED
CLERK, U.S. DISTRICT COURT
12/14/2022
CENTRAL DISTRICT OF CALIFORNIA
BY:        cd        DEPUTY

1   the Court, appear and plead guilty to an information in the form

2   attached to this agreement as Exhibit A or a substantially similar

3   form, which charges defendant in count one with mail fraud, in

4   violation of 18 U.S.C. § 1341; and in count two with introducing a

5   misbranded medical device into interstate commerce, in violation of

6   21 U.S.C. §§ 331(a), 352(a) &(o), and 333(a)(2).

7           b.   Not contest facts agreed to in this agreement.

8           c.   Abide by all agreements regarding sentencing

9   contained in this agreement.

10          d.   Appear for all court appearances, surrender as

11  ordered for service of sentence, obey all conditions of any bond,

12  and obey any other ongoing court order in this matter.

13          e.   Not commit any crime. However, offenses that would be

14  excluded for sentencing purposes under United States Sentencing

15  Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are

16  not within the scope of this agreement.

17          f.   Be truthful at all times with the United States

18  Probation and Pretrial Services Office and the Court.

19          g.   Pay the applicable special assessments at or before

20  the time of sentencing unless defendant has demonstrated a lack of

21  ability to pay such assessments.

22          h.   Defendant agrees that any and all criminal debt

23  ordered by the Court will be due in full and immediately. The

24  government is not precluded from pursuing, in excess of any payment

25  schedule set by the Court, any and all available remedies by which

26  to satisfy defendant's payment of the full financial obligation,

27  including referral to the Treasury Offset Program.

28

2

i.    Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 North Los Angeles Street, Suite 7516, Los Angeles, CA 90012. Defendant agrees that defendant's ability to pay criminal debt shall be assessed based on the completed Financial Disclosure Statement and all required supporting documents, as well as other relevant information relating to ability to pay.

j.    Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.    Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

3.    Defendant further agrees:

a.    To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to:

i.    $235,075.72 seized from a Capital One bank account number ending in 6365,

ii.   $61,741.70 seized from a JP Morgan Chase bank account number ending in 5879,

iii.  $11,378 seized from a JP Morgan Chase bank account number ending in 9876,

1          iv.   Any and all funds, securities, and negotiable

2  instruments on deposit with TD Ameritrade account number ending in

3  908615, and

4          v.   Any and all funds, securities, and negotiable

5  instruments on deposit with TD Ameritrade account number ending in

6  650414.

7          b.   To the Court's entry of an order of forfeiture at or

8  before sentencing with respect to the Forfeitable Property and to

9  the forfeiture of the assets.

10         c.   That the Preliminary Order of Forfeiture shall become

11  final as to the defendant upon entry.

12         d.   To take whatever steps are necessary to pass to the

13  United States clear title to the Forfeitable Property, including,

14  without limitation, the execution of a consent decree of forfeiture

15  and the completing of any other legal documents required for the

16  transfer of title to the United States.

17         e.   Not to contest any administrative forfeiture

18  proceedings or civil judicial proceedings commenced against the

19  Forfeitable Property. If defendant submitted a claim and/or petition

20  for remission for all or part of the Forfeitable Property on behalf

21  of himself or any other individual or entity, defendant shall and

22  hereby does withdraw any such claims or petitions, and further

23  agrees to waive any right he may have to seek remission or

24  mitigation of the forfeiture of the Forfeitable Property. Defendant

25  further waives any and all notice requirements of 18 U.S.C.

26  § 983(a)(1)(A).

27         f.   Not to assist any other individual in any effort

28  falsely to contest the forfeiture of the Forfeitable Property.

1         g.    Not to claim that reasonable cause to seize the

2 Forfeitable Property was lacking.

3         h.    To prevent the transfer, sale, destruction, or loss

4 of the Forfeitable Property to the extent defendant has the ability

5 to do so.

6         i.    That forfeiture of Forfeitable Property shall not be

7 counted toward satisfaction of any special assessment, fine,

8 restitution, costs, or other penalty the Court may impose, except

9 that the Attorney General or its designee, the Money Laundering and

10 Asset Recovery Section of the Department of Justice, may, in its

11 sole discretion, approve a restoration petition to have the

12 Forfeitable Property applied to the restitution award.

13         j.    With respect to any criminal forfeiture ordered as a

14 result of this plea agreement, defendant waives: (1) the

15 requirements of Federal Rules of Criminal Procedure 32.2 and 43(a)

16 regarding notice of the forfeiture in the charging instrument,

17 announcements of the forfeiture at sentencing, and incorporation of

18 the forfeiture in the judgment; (2) all constitutional and statutory

19 challenges to the forfeiture (including by direct appeal, habeas

20 corpus or any other means); and (3) all constitutional, legal, and

21 equitable defenses to the forfeiture of the Forfeitable Property in

22 any proceeding on any grounds including, without limitation, that

23 the forfeiture constitutes an excessive fine or punishment.

24 Defendant acknowledges that the forfeiture of the Forfeitable

25 Property is part of the sentence that may be imposed in this case

26 and waives any failure by the Court to advise defendant of this,

27 pursuant to Federal Rule of Criminal Procedure 11(b)(1)(J), at the

28 time the Court accepts defendant's guilty pleas.

## THE USAO'S OBLIGATIONS

4.   The USAO agrees to:

   a.   Not contest facts agreed to in this agreement.

   b.   Abide by all agreements regarding sentencing contained in this agreement.

   c.   Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the Court does not depart downward in offense level or criminal history category.

   d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

   e.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C. §§ 1001, 1014, 1028, 1028A, 1029, 1341, 1343, 1344, 1956, 1957, or the Federal Food, Drug, and Cosmetic Act ("FDCA") arising out of defendant's conduct described in the agreed-to factual basis set forth in this agreement. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any

1  departure from that range, and the sentence to be imposed after
2  consideration of the Sentencing Guidelines and all other relevant
3  factors under 18 U.S.C. § 3553(a).

4        f.   Pursuant to the Asset Forfeiture Policy Manual
5  (2021), Chapter 14, Sec. II.B.2 and 28 C.F.R. Part 9.8, upon a
6  determination that the Government can make the required
7  representations set forth therein, the Government agrees to submit a
8  restoration request to the Money Laundering and Asset Recovery
9  Section of the Department of Justice, seeking approval for assets
10  forfeited in satisfaction of the forfeiture money judgment to be
11  restored back to the victims in this case, which may, in turn,
12  satisfy in full or in part any restitution order. The Defendant
13  acknowledges that the Attorney General, or his designee, has the
14  sole discretion to approve or deny the restoration request

15                            NATURE OF THE OFFENSE

16      5.   Defendant understands that for defendant to be guilty of
17  the crime charged in count one, that is, mail fraud, in violation of
18  18 U.S.C. § 1341, the following must be true: First, the defendant
19  knowingly participated in, devised, or intended to devise a scheme
20  or plan to defraud, or a scheme or plan for obtaining money or
21  property by means of false or fraudulent pretenses, representations,
22  or promises. Deceitful statements of half-truths may constitute
23  false or fraudulent representations. Second, the statements made or
24  facts omitted as part of the scheme were material, that is, they had
25  a natural tendency to influence, or were capable of influencing, a
26  person to part with money or property. Third, the defendant acted
27  with the intent to defraud, that is, the intent to deceive and
28  cheat. Fourth, the defendant used, or caused to be used, the mails

1  to carry out or attempt to carry out an essential part of the

2  scheme. A defendant's belief that the victims of the fraud will be

3  paid in the future or will sustain no economic loss is no defense to

4  the crime.

5       6.   Defendant understands that for defendant to be guilty of

6  the crime charged in count two, that is, introducing a misbranded

7  medical device into interstate commerce, in violation of 21 U.S.C.

8  §§ 331(a), 352(a)&(o), and 333(a)(2), the following must be true:

9  First, the defendant knowingly introduced, or caused to be

10  introduced, a device into interstate commerce. Second, at the time

11  the device was introduced into interstate commerce, it was

12  misbranded. Third, the defendant acted with the intent to defraud or

13  mislead.

14                      PENALTIES AND RESTITUTION

15       7.   Defendant understands that the statutory maximum sentence

16  that the Court can impose for a violation of 18 U.S.C. § 1341 is: 20

17  years' imprisonment; a three-year period of supervised release; a

18  fine of $250,000 or twice the gross gain or gross loss resulting

19  from the offense, whichever is greatest; and a mandatory special

20  assessment of $100.

21       8.   Defendant understands that the statutory maximum sentence

22  that the Court can impose for a violation of 21 U.S.C. §§ 331(a),

23  352(a), (o), and 333(a)(2) is: 3 years' imprisonment; a one-year

24  period of supervised release; a fine of $250,000 or twice the gross

25  gain or gross loss resulting from the offense, whichever is

26  greatest; and a mandatory special assessment of $100.

27       9.   Defendant understands, therefore, that the total maximum

28  sentence for all offenses to which defendant is pleading guilty is:

23 years' imprisonment, a three-year period of supervised release, a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest, and a mandatory special assessment of $200.

10.   Defendant understands that defendant will be required to pay full restitution to the victims of the offenses to which defendant is pleading guilty. Defendant agrees that, in return for the USAO's compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any counts dismissed and charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in U.S.S.G. § 1B1.3, in connection with those counts and charges. The parties currently believe that the applicable amount of restitution is approximately **$5,821,474**, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

11.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized

by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

12. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

13. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to

1  an absolute certainty the effect of his convictions on his

2  immigration status. Defendant nevertheless affirms that he wants to

3  plead guilty regardless of any immigration consequences that his

4  pleas may entail, even if the consequence is automatic removal from

5  the United States.

6  <u>FACTUAL BASIS</u>

7      14.  Defendant admits that defendant is, in fact, guilty of the

8  offenses to which defendant is agreeing to plead guilty. Defendant

9  and the USAO agree to the statement of facts provided below and

10  agree that this statement of facts is sufficient to support the

11  pleas of guilty to the charges described in this agreement and to

12  establish the Sentencing Guidelines factors set forth in paragraph

13  16 below, but is not meant to be a complete recitation of all facts

14  relevant to the underlying criminal conduct or all facts known to

15  either party that relate to that conduct.

16      Ulthera Inc. ("Ulthera") was the manufacturer of a Class II

17  FDA-cleared device called the "Ulthera System," an ultrasound device

18  used to tighten the skin of dermatology patients. One component of

19  the Ulthera System was the Ulthera transducer ("transducer"), which

20  delivered the ultrasound energy and was applied directly to the

21  patient's skin. Transducers used in the Ulthera System were designed

22  to provide no more than 2,400 dosage lines of treatment. After 2,400

23  dosage lines of treatment, the transducer was considered depleted.

24  As reflected in the device instructions, once depleted, the

25  transducer should have been disposed of in accordance with health

26  code regulations.

27

28

1    Merz North America Inc. ("Merz") was the exclusive U.S.

2  distributor of Ulthera lasers and Ulthera transducers. Merz only

3  sold new transducers.

4    Cynosure LLC ("Cynosure") was the sole U.S. distributor of

5  SculpSure PAC keys, USB-capable devices used to activate SculpSure

6  machines, which were FDA-cleared laser devices intended to reduce

7  fat on medical patients.

8    Global Electronic Supplies ("GES") was a company operating in

9  Los Angeles, California, through which defendant purchased depleted

10  transducers and, with the specific intent to defraud, sold

11  counterfeit PAC keys to victim medical providers ("the victim

12  providers"). GES was not registered to do business in any state.

13    Thermagen was a company operating in Los Angeles, California,

14  through which defendant, with the specific intent to defraud, and

15  via interstate mail carriers, sold misbranded and adulterated

16  transducers to the victim providers that were falsely marked as new

17  Ulthera transducers. Thermagen was not registered to do business in

18  any state.

19    MSY Technologies Inc. ("MSY Technologies") was an entity that

20  did business as Thermagen and GES. Defendant served as the Chief

21  Executive Officer, Chief Financial Officer, and Secretary of MSY

22  Technologies.

23    Beginning no later than March 2016 and continuing through at

24  least June 2022, in Los Angeles County, within the Central District

25  of California, and elsewhere, defendant, together with others,

26  knowingly and with the intent to defraud, devised, participated in,

27  and executed a scheme to defraud the victim providers and others,

28  and to obtain money and property from the victim providers, by means

12

of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

Defendant's fraudulent scheme operated as follows:

- Through GES, defendant purchased depleted transducers for nominal amounts of money, often $50. To conceal his role in GES, defendant operated GES using stolen and fictitious identities ("the illicit identities").

- Defendant then remanufactured or caused the remanufacturing of those depleted transducers. Defendant also added and caused to be added to the transducers fabricated serial numbers to make the transducers appear new.

- Defendant, doing business as Thermagen, fraudulently marketed and sold, and caused to be fraudulently marketed and sold, the remanufactured transducers to the victim providers and other victim customers as "new" Ulthera transducers with 2,400 remaining dosage lines of treatment.

- To conceal his connection to Thermagen, defendant used the names of fabricated Thermagen employees on correspondences with the victim providers and used out-of-state commercial mailboxes for Thermagen's return address on shipments.

- Defendant caused the victim providers to send payment for the transducers via Paypal and Square accounts defendant controlled.

- Using the United States Postal Service ("USPS"), defendant, doing business as Thermagen, shipped and caused the shipping of the misbranded and adulterated transducers to the victim providers.

- Through GES, defendant also fraudulently marketed and sold counterfeit PAC Keys to victim providers.

- Defendant shipped GES's counterfeit PAC keys to the victim providers through USPS and directed payments for those counterfeit PAC keys to payment processing accounts defendant controlled.

- Defendant remitted fraudulent proceeds from the sale of misbranded and adulterated medical devices to bank accounts defendant controlled, including accounts defendant opened in the names of MSY Technologies, MSY Property Investments LLC, defendant's au pair, and defendant.

13

On or about February 20, 2020, within the Central District of California, and elsewhere, defendant, for the purpose of executing the above-described scheme to defraud, willfully caused and aided and abetted co-schemers to willfully cause a used and remanufactured Ulthera transducer bearing false serial number 20M011610096, which defendant falsely represented to be new, to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service ("USPS"), according to the directions thereon.

In doing so, defendant, doing business as Thermagen, with the intent to defraud and mislead, introduced, and caused to be introduced, into interstate commerce a used and remanufactured Ulthera transducer, which was a device within the meaning of 21 U.S.C. § 321(h), and which was misbranded within the meaning of 21 U.S.C. § 352(a), in that its labeling was false and misleading because such labeling indicated that the device was "new," and 21 U.S.C. § 352(o), in that the device was manufactured, prepared, propagated, compounded, and processed in an establishment not duly registered with the FDA as required under 21 U.S.C. § 360.

In particular, on February 20, 2020, an undercover FDA agent visited the Thermagen website to purchase a transducer. The website falsely advertised "Ulthera transducers (new) - $1,695 Each," along with images of the transducers. The website also falsely stated, "We sell NEW tips/transducers for the Ulthera Ultherapy machines. We get our transducers from clinics who sell their machines or close down their offices. All tips/transducers have 2400 lines and have good expiration dates."

14

1     The undercover FDA agent then purchased a transducer from
2   defendant, who was doing business as Thermagen, and received an
3   order confirmation with the transducer's USPS tracking number. USPS
4   records show that Thermagen shipped the transducer from Los Angeles,
5   California, to Florida the same day, February 20, 2020.

6     Merz thereafter confirmed that the serial number on the
7   transducer that the undercover FDA agent purchased was false.
8   Moreover, the sole lawful U.S. distributor of the Ulthera
9   transducers, Merz, analyzed several of the transducers that
10  defendant, doing business as Thermagen, sold into interstate
11  commerce. At the conclusion of its analysis, Merz determined that
12  the transducers defendant sold through Thermagen were unsafe,
13  depleted, and shipped in unsealed packaging that increased the risk
14  of contamination.

15    Moreover, to lawfully remanufacture, prepare, propagate,
16  compound, or process transducers, defendant was required to register
17  with the FDA. A search of FDA databases revealed that defendant had
18  not been registered to remanufacture medical devices since June
19  2016. Moreover, in October 2019, defendant falsely stated to an FDA
20  Consumer Safety Officer that defendant no longer sold medical
21  devices and instead was in the "real estate" business.

22    In June 2022, federal agents executed search warrants on
23  defendant's home and the GES-Thermagen office in Los Angeles,
24  California. In defendant's home, agents encountered defendant and
25  found several cell phones, a number of which were labelled with
26  company names, including GES. In at least one of those cell phones,
27  agents discovered text messages in which defendant identified
28  himself by aliases and talked to customers about the refurbished

1  components that Thermagen and GES sold. In the Thermagen-GES office,
2  among other things, agents seized 75 Ulthera transducers in various
3  stages of refurbishment, a manufacturing workstation containing
4  tools and transducer parts, and detailed records of Thermagen and
5  GES's expenses.

6      Given defendant's use of shell companies, stolen identities,
7  fictitious identities, out-of-state commercial mailboxes, and
8  layered financial accounts to receive fraudulent proceeds, and the
9  specialized knowledge defendant used to remanufacture transducers
10  and PAC keys, defendant's scheme involved sophisticated means.

11      15.     In total, doing business as Thermagen and GES,
12  defendant unlawfully sold thousands of medical devices, including
13  transducers and PAC keys, and from those sales received at least
14  $5,821,474 in fraudulent proceeds that should have been paid to Merz
15  and Cynosure, the sole U.S. distributors of the transducers and PAC
16  keys, respectively. Defendant's conduct also caused reputation harm
17  to the device manufacturers and distributors, including Merz and
18  Cynosure.

19                          SENTENCING FACTORS

20      16.  Defendant understands that in determining defendant's
21  sentence the Court is required to calculate the applicable
22  Sentencing Guidelines range and to consider that range, possible
23  departures under the Sentencing Guidelines, and the other sentencing
24  factors set forth in 18 U.S.C. § 3553(a). Defendant understands that
25  the Sentencing Guidelines are advisory only, that defendant cannot
26  have any expectation of receiving a sentence within the calculated
27  Sentencing Guidelines range, and that after considering the
28  Sentencing Guidelines and the other § 3553(a) factors, the Court

1  will be free to exercise its discretion to impose any sentence it

2  finds appropriate up to the maximum set by statute for the crimes of

3  conviction.

4      17.   Defendant and the USAO agree to the following applicable

5  Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base offense level: | 7 | U.S.S.G. § 2B1.1(a) |
| Loss of between $3.5 and $9.5 million: | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| 10 or more victims or mass marketing: | +2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |
| Sophisticated means: | +2 | U.S.S.G. § 2B1.1(b)(10)(C) |
| Use of means of identification unlawfully to produce or obtain any other means of identification | +2 | U.S.S.G. § 2B1.1(b)(11)(C)(i) |

15  Defendant and the USAO reserve the right to argue that additional

16  specific offense characteristics, adjustments, and departures under

17  the Sentencing Guidelines are appropriate.

18      18.   Defendant understands that there is no agreement as to

19  defendant's criminal history or criminal history category.

20      19.   Defendant and the USAO reserve the right to argue for a

21  sentence outside the sentencing range established by the Sentencing

22  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),

23  (a)(2), (a)(3), (a)(6), and (a)(7).

24                  <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

25      20.   Defendant understands that by pleading guilty, defendant

26  gives up the following rights:

27          a.   The right to persist in a plea of not guilty.

28          b.   The right to a speedy and public trial by jury.

17

1        c.    The right to be represented by counsel -- and if

2  necessary have the Court appoint counsel -- at trial. Defendant

3  understands, however, that, defendant retains the right to be

4  represented by counsel -- and if necessary have the Court appoint

5  counsel -- at every other stage of the proceeding.

6        d.    The right to be presumed innocent and to have the

7  burden of proof placed on the government to prove defendant guilty

8  beyond a reasonable doubt.

9        e.    The right to confront and cross-examine witnesses

10  against defendant.

11        f.    The right to testify and to present evidence in

12  opposition to the charges, including the right to compel the

13  attendance of witnesses to testify.

14        g.    The right not to be compelled to testify, and, if

15  defendant chose not to testify or present evidence, to have that

16  choice not be used against defendant.

17        h.    Any and all rights to pursue any affirmative

18  defenses, Fourth Amendment or Fifth Amendment claims, and other

19  pretrial motions that have been filed or could be filed.

20               WAIVER OF RETURN OF DIGITAL DATA

21    21.  Understanding that the government has in its possession

22  digital devices and/or digital media seized in connection with this

23  case, defendant waives any right to the return of digital data

24  contained on those digital devices and/or digital media and agrees

25  that if any of these digital devices and/or digital media are

26  returned to defendant, the government may delete all digital data

27  from those digital devices and/or digital media before they are

28  returned to defendant.

WAIVER OF APPEAL OF CONVICTION

22.   Defendant understands that, with the exception of an
appeal based on a claim that defendant's guilty pleas were
involuntary, by pleading guilty defendant is waiving and giving up
any right to appeal defendant's convictions on the offenses to which
defendant is pleading guilty. Defendant understands that this waiver
includes, but is not limited to, arguments that the statutes to
which defendant is pleading guilty are unconstitutional, and any and
all claims that the statement of facts provided herein is
insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

23.   Defendant agrees that, provided the Court imposes a term
of imprisonment within or below the range corresponding to an
offense level of **31** and the criminal history category calculated by
the Court, defendant gives up the right to appeal all of the
following: (a) the procedures and calculations used to determine and
impose any portion of the sentence; (b) the term of imprisonment
imposed by the Court; (c) the fine imposed by the Court, provided it
is within the statutory maximum; (d) to the extent permitted by law,
the constitutionality or legality of defendant's sentence, provided
it is within the statutory maximum; (e) the amount and terms of any
restitution order, provided it requires payment of no more than
**$5,821,474**; (f) the term of probation or supervised release imposed
by the Court, provided it is within the statutory maximum; and
(g) any of the following conditions of probation or supervised
release imposed by the Court: the conditions set forth in Second
Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

19

1  alcohol and drug use conditions authorized by 18 U.S.C.

2  § 3563(b)(7).

3      24.  The USAO agrees that, provided (a) all portions of the

4  sentence are at or below the statutory maximum specified above and

5  (b) the Court imposes a term of imprisonment within or above the

6  range corresponding to an offense level of **28** and the criminal

7  history category calculated by the Court, the USAO gives up its

8  right to appeal any portion of the sentence.

9                   WAIVER OF COLLATERAL ATTACK

10     25.  Defendant also gives up any right to bring a post-

11 conviction collateral attack on the convictions or sentence,

12 including any order of restitution, except a post-conviction

13 collateral attack based on a claim of ineffective assistance of

14 counsel, a claim of newly discovered evidence, or an explicitly

15 retroactive change in the applicable Sentencing Guidelines,

16 sentencing statutes, or statutes of conviction. Defendant

17 understands that this waiver includes, but is not limited to,

18 arguments that the statutes to which defendant is pleading guilty is

19 unconstitutional, and any and all claims that the statement of facts

20 provided herein is insufficient to support defendant's pleas of

21 guilty.

22             RESULT OF WITHDRAWAL OF GUILTY PLEA

23     26.  Defendant agrees that if, after entering a guilty plea

24 pursuant to this agreement, defendant seeks to withdraw and succeeds

25 in withdrawing defendant's guilty pleas on any basis other than a

26 claim and finding that entry into this plea agreement was

27 involuntary, then (a) the USAO will be relieved of all of its

28 obligations under this agreement; and (b) should the USAO choose to

1  pursue any charge that was either dismissed or not filed as a result
2  of this agreement, then (i) any applicable statute of limitations
3  will be tolled between the date of defendant's signing of this
4  agreement and the filing commencing any such action; and
5  (ii) defendant waives and gives up all defenses based on the statute
6  of limitations, any claim of pre-indictment delay, or any speedy
7  trial claim with respect to any such action, except to the extent
8  that such defenses existed as of the date of defendant's signing
9  this agreement.

RESULT OF VACATUR, REVERSAL OR SET-ASIDE

11     27.  Defendant agrees that if any count of conviction is
12  vacated, reversed, or set aside, both the USAO and defendant will be
13  released from all their obligations under this agreement.

EFFECTIVE DATE OF AGREEMENT

15     28.  This agreement is effective upon signature and execution
16  of all required certifications by defendant, defendant's counsel,
17  and an Assistant United States Attorney.

BREACH OF AGREEMENT

19     29.  Defendant agrees that if defendant, at any time after the
20  effective date of this Agreement, knowingly violates or fails to
21  perform any of defendant's obligations under this agreement ("a
22  breach"), the USAO may declare this agreement breached. All of
23  defendant's obligations are material, a single breach of this
24  agreement is sufficient for the USAO to declare a breach, and
25  defendant shall not be deemed to have cured a breach without the
26  express agreement of the USAO in writing. If the USAO declares this
27  agreement breached, and the Court finds such a breach to have
28  occurred, then: (a) if defendant has previously entered guilty pleas

21

1   pursuant to this agreement, defendant will not be able to withdraw

2   the guilty pleas, and (b) the USAO will be relieved of all its

3   obligations under this agreement.

4          30.   Following the Court's finding of a knowing breach of this

5   agreement by defendant, should the USAO choose to pursue any charge

6   that was either dismissed or not filed as a result of this

7   agreement, then:

8          a.   Defendant agrees that any applicable statute of

9   limitations is tolled between the date of defendant's signing of

10  this agreement and the filing commencing any such action.

11         b.   Defendant waives and gives up all defenses based on

12  the statute of limitations, any claim of pre-indictment delay, or

13  any speedy trial claim with respect to any such action, except to

14  the extent that such defenses existed as of the date of defendant's

15  signing this agreement.

16         c.   Defendant agrees that: (i) any statements made by

17  defendant, under oath, at the guilty plea hearing (if such a hearing

18  occurred prior to the breach); (ii) the agreed to factual basis

19  statement in this agreement; and (iii) any evidence derived from

20  such statements, shall be admissible against defendant in any such

21  action against defendant, and defendant waives and gives up any

22  claim under the United States Constitution, any statute, Rule 410 of

23  the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

24  Criminal Procedure, or any other federal rule, that the statements

25  or any evidence derived from the statements should be suppressed or

26  are inadmissible.

27

28

1          COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

2                         OFFICE NOT PARTIES

3       31.  Defendant understands that the Court and the United States

4  Probation and Pretrial Services Office are not parties to this

5  agreement and need not accept any of the USAO's sentencing

6  recommendations or the parties' agreements to facts or sentencing

7  factors.

8       32.  Defendant understands that both defendant and the USAO are

9  free to: (a) supplement the facts by supplying relevant information

10 to the United States Probation and Pretrial Services Office and the

11 Court, (b) correct any and all factual misstatements relating to the

12 Court's Sentencing Guidelines calculations and determination of

13 sentence, and (c) argue on appeal and collateral review that the

14 Court's Sentencing Guidelines calculations and the sentence it

15 chooses to impose are not error, although each party agrees to

16 maintain its view that the calculations in paragraph 16 are

17 consistent with the facts of this case. While this paragraph permits

18 both the USAO and defendant to submit full and complete factual

19 information to the United States Probation and Pretrial Services

20 Office and the Court, even if that factual information may be viewed

21 as inconsistent with the facts agreed to in this agreement, this

22 paragraph does not affect defendant's and the USAO's obligations not

23 to contest the facts agreed to in this agreement.

24      33.  Defendant understands that even if the Court ignores any

25 sentencing recommendation, finds facts or reaches conclusions

26 different from those agreed to, and/or imposes any sentence up to

27 the maximum established by statute, defendant cannot, for that

28 reason, withdraw defendant's guilty plea, and defendant will remain

bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

34.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

1    PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2         35.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    E. MARTIN ESTRADA
     United States Attorney
9

10   _____        _____
     GREGORY BERNSTEIN                          Date
11   HEATHER C. GORMAN
     Assistant United States Attorneys
12
                                               12/8/2022
13   _____        _____
     Kambiz Youabian                           Date
14   Defendant
                                               12/8/2022
15   _____        _____
     Alaleh Kamran                             Date
16   Attorney for Defendant
     Kambiz Youabian

17

18

19

20

21

22

23

24

25

26

27

28

                                    25

<u>CERTIFICATION OF DEFENDANT</u>

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____                    12/8/2022
Kambiz Youabian                                     Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Kambiz Youabian's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          12/8/2022
Alaleh Kamran                             Date
Attorney for Defendant
Kambiz Youabian